Statement of the Case.
NICHOLLS, J.
Plaintiffs are three of the-children and heirs of James D. Warner, who.died intestate in the parish of Winn.' They allege that at the death of their father they *84 were minors; that they and their mother, Mrs. Louisiana R. Warner, his surviving widow, were left in necessitous circumstances; that their mother (the surviving widow) and natural tutrix of petitioner, then minors, made claim in their behalf, as minor children in necessitous circumstances, for $1,000, to be paid out of the estate of their father; that a certain tract of land which they described, which belonged to, and which was. a part of his estate, was adjudicated to petitioners, through their natural tutrix, for the price and sum of $160, said "amount to be credited on the said claim of $1,000, for the minor children in necessitous circumstances, as petitioners were entitled to receive under the law; that the fee and title to the aforesaid property vested in petitioners at that time, and has always and does now remain in petitioners, and that petitioners are the bona fide legal owners of said lands, which is now worth the sum of $8,000; that they never parted with the title thereto; that the Hall & Legan Lumber Company, Limited, a corporation organized under the laws of Louisiana, and domiciled at Tannehill, Winn parish, La., are now in possession of the above-described property, and claim to own the same, but that the said company has no legal title whatever to said land.
In view of the premises petitioners prayed that defendants be cited, and that on final trial they be decreed to be the owners in indivisión and entitled to the possession of the said land.
Defendant excepted that there was a nonjoinder of necessary parties, and prayed that the suit be dismissed. It filed later an exception of no right or cause of action.
Under reservation of its exception it answered, pleading, first, the general issue. It averred that it was the owner of the land described; that it acquired ownership of the same from the South Arkansas Lumber Company for a good and valid consideration on the 6th of May, 1903, by deed duly recorded in the conveyance records; that the South Arkansas Lumber Company bought said land from Mrs. L. R. Warner for the price of $600 on the 31st of July, 1900, duly recorded in the conveyance records of the parish which was a fair and full price for said land at that time; that the said Mrs. L. R. Warner was never natural tutrix to the plaintiffs, nor did she claim any portion of the D. J. Warner succession for them, nor did they have any right thereto.
Defendant averred that Mrs. L. R. Warner did receive in her own individual name and right from said succession of D. J. Warner the sum of $1,000 as shówn by the homologated account of the administrator of said succession ; that the procSs verbal of sale, made and executed by John T. Warner, administrator of said succession, which is of record among the succession proceedings of said parish shows that said Mrs. L. R. Warner purchased the land sued for in her own name, and the same was adjudicated to her individually, and she received all rights, title, and interest therein as is shown by said administrator’s deed, of record on page 597, of Book E, of the records of Winn parish.
Further answering, defendants showed that the tableau of distribution and final account filed and duly homologated by a judgment of this honorable coúrt, in the proceedings of said succession, shows that the said Mrs. L. R. Warner, did not claim, or receive any portion of said succession for plaintiffs herein, but that she received the $1,000 from the administrator in her own right; that she is still living as a widow in your said parish, and plaintiffs, who are not minors, have no cause of action against her.
Further answering, defendant avers that acting on the faith of the aforesaid deeds, and judgment of court, homologating said final account, it purchased said lands in good faith and entirely innocent of any *86 claims that the plaintiffs or any one else had against said lands whatever, and which claims defendant specially denied.
Defendant denied that plaintiff herein have or ever had any interest in said lands, and show that its title to said lands is good and valid and should be so declared by this honorable court.
In view of the premises, defendant prayed that plaintiff take nothing; that there be judgment in its favor and against plaintiffs, rejecting plaintiffs’ demands and recognizing defendant’s title to said lands and decreeing it to be the owner thereof. And for all necessary orders and decrees, costs, and general relief.
The district court rendered judgment in favor of the defendant and against the plaintiffs rejecting the demands of the plaintiffs and dismissing their suit, and decreeing the defendant to be the owner of and entitled to the possession of the land sued for.
Plaintiffs have appealed.
James D. Warner, the father of the plaintiffs, was twice married.
I-Ie left a widow and 10 children; 5 by his first wife, and 5 by his second marriage. Plaintiffs are children of the second marriage and minors at the time of the death of their father. The succession of the deceased was placed under administration with John T. Warner (a son by the first marriage). An inventory of the succession was made showing property, real and personal, to an amount of $1,943. The administrator obtained an order to sell all the property of the succession on a petition in which he alleged that there were a number of debts due by the succession, principally a claim of $1,000 due the widow who was in necessitous circumstances, and that a sale of all the property was necessary to pay the same.
The sale was made as ordered. At that sale the widow, in her individual name, bought property, real and personal, for the aggregate price of $738; among the property so bought being the land claimed by the plaintiffs for the price of $160.
After the sale which amounted to $1,474.35, the administrator filed a list of debts and a tableau of proposed distribution of the proceeds of the succession. He prayed for advertisement of the same, and that he be authorized and ordered to pay off the indebtedness in accordance with the tableau. On this list of debts was placed as a debt “claim widow in necessitous circumstances $1,000.”
The court ordered that notice be given according to law. If no opposition should be made, it authorized and ordered the administrator to pay off the indebtedness according to the tableau on file.
The administrator then filed a final account of his administration in, which he charged himself with $1,474 as the proceeds of the sale, and credited himself with vouchers for payment of various amounts, among others, $1,000 to Mrs. L. R. Warner, widow.
1-Ie prayed ■ for advertisement of and the homologation of the account, and on July 30, 1898, the account was homologated.
In the transcript, under date of December 22, 1898, appears a receipt from Mrs. Warner to the administrator of the succession for $100, which recited that “the same being the balance due me (her) on my (her) claim in said succession.”
Before making out a proces verbal of sale the administrator executed a deed of the land in controversy to “Mrs. Louisiana R. Warner, she being the last and highest bidder,” in which it was recited “and said purchaser having complied with the bid and terms and conditions of sale, I, John T. Warner, administrator, aforesaid, by virtue of the authority in me vested by law, do, by these presents, sell, assign, convey, set over and deliver unto the said Mrs. Louisiana Warner, her heirs, assigns and legal representatives, all and singular the above-de *88 scribed property, to have and to hold the same in full ownership free from all incumbrances.”
This deed was recorded August 29, 1900.
Mrs. Warner individually sold the property to the South Arkansas Lumber Company for $600 cash. The act of sale was recorded on the same day. The South Arkansas Lumber Company sold this, together with other property, to the defendant.
Opinion.
In the first paragraph of the syllabus of the brief filed on behalf of the plaintiffs, the position advanced by them is stated to be that the title itself to the charitable fund granted by article 3252 of the Civil Code vested in the minors, when there are any, and the widow only has the usufruct of the “fund” during her widowhood. Civ. Code, art. 3252; Cross on Successions, g 248, p. 387; Succession of Yarborough, 13 La. Ann. 378; Succession of Schexnaydre, 16 La. Ann. 195; Corner v. Bourg, 26 La. Ann. 615.
We understand plaintiff to urge that the title to the land involved in this ease did not reach the widow under a sale made to her at administrator’s sale, but that it was in reality turned over to her in kind or as a dation en paiement of the claim of the widow or minor children in necessitous circumstances; that under such circumstances the title to the 160 acres of land which she ostensibly “bought” vested at once, not in the widow, but in the minors, the widow having only the usufruct of the same during widowhood; and her rights being usufructuary rights in land she was without right or authority to alter the substances of the thing held in usufruct and change the usufruct from one “on land” to one “on money” of which she became the owner. It is said there was never judicial, legal, or other kind of proceedings had to effect a sale of the land whose title vested in them while they were minors, and they have never themselves parted with the title which they acquired by operation of law.
It is urged that the widow did not receive 1 cent of the $1,000 claim or fund in actual money, which having been received by her she afterwards (as usufructuary of the same) invested in the land and in the movables turned over to her, but that the land and the movables were turned over or allotted to her in satisfaction or lieu of the $1,000 which the law declared -should be paid over to the widow or minor children in necessitous circumstances; that having received “land” instead of “money,” and paid out no money to the succession for the land, she could not change her position from that of a person holding a usufruct on land into that of a person who-would have held a usufruct on money had she received money, and dispose of the land as-she could legally have done of the money. If we understand the argument they deny that the title to the land was ever shifted from the succession to Mrs. Warner through the-instrumentality of the administrator’s sale, and insist that the title went direct from the succession to the chiidren; that the property was offered for sale at public auction by the-administrator acting as auctioneer under order of the district court; that Mrs. Warner bid upon it in her individual name; that she was the last and highest bidder; that it was adjudicated to her individual name; and that she became individually bound for the price-by the adjudication, and by the fact of adjudication became owner of the property subject only in case of refusal on her part to comply with the terms of sale to annihilation of her right — are all matters which cannot be denied' or ignored. The title to the land was not vested in either the widow or the minor children ipso facto by the simple fact of the-death of the father and of the necessitous, condition of the widow and children. What was granted to them by the General Assembly was money. In order that the title should. *90 vest in either the widow or the children or both in order to make them owners of the same, it had to be transferred from the succession to them in some legal way, through some legal proceeding. The administrator was without power or authority to transfer the land to the children by an allotment or a Ration en paiement to them in lieu of money, and their mother (who was not their tutrix) could not legally bind the children to accept title to land in lieu of money. (She could not have done so even had she been their tutrix.) When Mrs. Warner became the adjudicatee of the property in her own name, and became personally indebted for the price, the administrator was authorized at his own risk and on his own responsibility to credit the purchaser with the price she owed, in view of the fact that her receipt to him discharged the succession from a debt to that amount, which she was entitled to receive, either as owner or as usufructuary.
It is a matter of everyday occurrence for the sheriff, at execution sale, or the administrator, at probate sales made by themselves as auctioneers, to give credit to the purchasers for the price due by him if they should hold a privileged or mortgage claim on the property.
The purchaser being really entitled to receive the price, the fact that the sheriff, or the auctioneer, did not compel the actual payment of the price, but received the creditors’ receipt for corresponding amount to come to him through the sale, did not have the effect of defeating the purchaser’s title to the land purchased. In this instance it cannot be denied that the widow would have been entitled to receive by u preference from the succession whether as owner, or as usufructuary, an amount equal to the price due by her for the property. Owing the succession' on the price of the property, and entitled to receive by preference from the succession a corresponding amount under the $1,000 claim, she had the right, without the possibility of any complaint from the plaintiffs, to apply the amount which would be coming to her from that source to the payment of the price due her for the property. The plaintiffs could not, therefore, claim that she had illegally applied moneys belonging to them to the payment of her individual debt. If such payment was, in fact, illegal, their recourse would not be to claim for themselves directly the ownership of the property so paid for.
Where a person purchases real estate with money belonging to another which he had no right to use for that purpose, the title of the property so purchased does not vest in the person where funds have been so improperly used.
The widow was under no obligation, in this instance, to purchase the property for the minors; they would have had the right ’to repudiate any such purchase on their behalf. She did not attempt to do so. She acted throughout as she had the right to do in her individual name, and in her individual behalf-, and she was dealt with by third parties in her individual name as they had the right to do. There was nothing appearing anywhere in the succession proceedings, or in the records dehors the succession which would show the existence of any claim to this property by the plaintiffs or equities in their favor. The defendant legally bought on the faith of the records, and is entitled to protection from attack.
The judgment appealed from is correct, and it is hereby affirmed.